UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MITCHELL B. MODELL,

                        Plaintiff,

-against-

ARGONAUT INSURANCE COMPANY,
n/k/a ARGO GROUP, and ERIC SPIEL,

                        Defendants.

No. 1:23-cv-01488 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

       Mitchell B. Modell ("Modell" or "Plaintiff"), the former Chief Executive Officer of Modell's Sporting Goods, Inc. ("MSGI"), brings this action against Argonaut Insurance Company ("Argo" or the "Insurer")[1] and MSGI's former Chief Financial Officer, Eric Spiel ("Spiel," and, together with Argo, the "Defendants"). *See* ECF No. 1 ("Compl." or the "Complaint"). This action concerns a directors-and-officers insurance policy that Argo provided to MSGI that covers both Plaintiff and Spiel. *Id.* ¶ 1. Plaintiff protests the provision of insurance benefits to Spiel and seeks a declaratory judgment against the Defendants and other relief based on Argo's breach or anticipatory breach of the insurance policy. *Id.* Now before the Court are Argo's motion to strike certain paragraphs of the Complaint, ECF No. 20, and Argo's motion to dismiss the Complaint, ECF No. 24, both of which are joined by Spiel, ECF No. 19. For the following reasons, the motion to dismiss is GRANTED. Because the Court grants the motion to dismiss, the motion to strike is DENIED as moot.

---

[1] Argo states that it was "incorrectly identified in the caption as 'n/k/a[] ARGO GROUP, a Bermuda corporation.'" ECF No. 25 at 1.

1

## BACKGROUND[2]

### I. The Parties and the Policy

MSGI owned and operated a chain of retail sporting-goods stores with locations in New York and elsewhere.  *Id.* ¶ 7.  During the relevant time period, Plaintiff was MSGI's Chief Executive Officer and Spiel was MSGI's Chief Financial Officer.  *Id.* ¶ 8.

Argo marketed, sold, issued, and delivered to MSGI a Private Company Directors and Officers Liability, Employment Practices Liability and Miscellaneous Professional Liability Insurance policy (ECF No. 1-1 (the "Policy")).  *Id.* ¶¶ 1, 3, 11.  The Policy's term runs from March 1, 2019 through April 1, 2026, and the applicable policy limit is $5,000,000.  *Id.* ¶ 11.  The Policy provides coverage to MSGI and MSGI's directors and officers, including Plaintiff and Spiel, and requires that the Policy's proceeds be paid to directors-and-officers coverage before any entity or corporate coverage.  *Id.* ¶ 13.

### II. MSGI's Bankruptcy

On March 11, 2020, MSGI filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court of the District of New Jersey (the "Bankruptcy Court").  *Id.* ¶ 9.  On November 13, 2020, the Bankruptcy Court entered an order confirming the Chapter 11 Plan of MSGI.  *Id.* ¶ 10.  As part of that plan, a liquidating trust was

---

[2] Unless otherwise stated, the facts herein are taken from the Complaint.  The Court may also consider the insurance policy, which is the subject of the instant dispute and was attached to the Complaint.  *See, e.g.*, *Gregory v. Navigators Ins. Co.*, No. 22-cv-04834 (VEC), 2022 WL 17551995, at *1 n.1 (S.D.N.Y. Dec. 9, 2022) (considering insurance policy incorporated by reference in a complaint at the motion-to-dismiss stage), *aff'd*, No. 23-17, 2023 WL 8538173 (2d Cir. Dec. 11, 2023) (summary order); *New Image Roller Dome, Inc. v. Travelers Indem. Co. of Ill.*, 310 F. App'x 431, 432 (2d Cir. 2009) (summary order) ("When deciding a motion to dismiss, a district court may consider documents attached to the complaint or incorporated by reference into the complaint," including an "insurance policy" with terms subject to dispute.).

created and a liquidation trustee was appointed to receive and administer the assets for the liquidating trust (the "Liquidation Trustee"). *Id.*

### III. The Adversary Proceeding

On March 10, 2022, the Liquidation Trustee commenced a pending litigation against Plaintiff, Spiel, and others, in their respective capacities as former officers and/or directors of MSGI, captioned *MSGI Liquidation Trust v. Mitchell Modell et al.*, No. 22-01076 (VFP) (Bankr. D.N.J.) (the "Adversary Proceeding"). Compl. ¶¶ 1, 14. Argo accepted its coverage obligations to Plaintiff, Spiel, and others, subject to a reservation of rights. *Id.* ¶ 16. In doing so, Plaintiff alleges that Argo advised that "notwithstanding [Argo's] right and duty to defend any Claim . . . the Insureds shall have the option to . . . consent to a settlement." *Id.* ¶ 17 (emphasis omitted). Argo then began reimbursing Plaintiff's and Spiel's defense fees and expenses in connection with the Liquidation Trustee's pre-filing investigation and their defense of the claims asserted in the Adversary Proceeding. *Id.* ¶ 19.

The parties to the Adversary Proceeding and Argo agreed to attend a mediation in September 2022. *Id.* ¶ 20. The Liquidation Trustee represented to the Bankruptcy Court that before the mediation, "Mr. Spiel and the Liquidation Trustee exchanged informal discovery and position papers regarding the merits of, inter alia, the Spiel Claims" in the Adversary Proceeding. *Id.* ¶ 21. Plaintiff alleges that, in the position papers, Spiel "made various admissions of liability against his own interests and against Plaintiff's interests to the Liquidation Trustee," without prior notice or consent by Plaintiff or Argo. *Id.* ¶¶ 22, 30. Plaintiff asserts that this conduct breached the Policy. *Id.* ¶ 25.

In September 2022, Plaintiff became aware of Spiel's conduct and admissions, and Plaintiff's counsel informed Argo and raised Plaintiff's objections to that conduct. *Id.* ¶ 29. Argo continued to pay for Spiel's defense, utilizing the available limits under the Policy that also

includes coverage for Plaintiff and other insureds. *Id.* ¶ 31. On February 1, 2023, the Liquidation Trustee and Spiel executed a Settlement Agreement that requires Spiel to cause Argo to pay $2.8 million to the Liquidation Trustee, and to cooperate with the Liquidation Trustee, in exchange for Spiel's dismissal from the Adversary Proceeding with mutual releases. *Id.* ¶ 33. Plaintiff protests that Argo did not obtain Plaintiff's (or Argo's) consent to pay Spiel's settlement. *Id.* ¶ 37. Plaintiff further takes issue with the fact that Argo expressed its intention to fund the settlement. *Id.* ¶ 39.

## PROCEDURAL HISTORY

Modell sued Defendants on February 2, 2023. *See generally* Compl. On April 12, 2023, Argo filed a motion to strike certain paragraphs of the Complaint, ECF No. 17, and a motion to dismiss the Complaint, ECF No. 18. On April 13, 2023, Argo filed corrected versions of its motion to strike, ECF No. 21 ("MTS Br."), and its motion to dismiss, ECF No. 25 ("MTD Br."). Spiel joined Argo's motion to strike and motion to dismiss, and filed an additional brief in support of the motion to dismiss. ECF No. 19 ("Spiel Br."). On June 2, 2023, Plaintiff opposed the motion to strike, ECF No. 35, and opposed the motion to dismiss, ECF No. 34 ("MTD Opp."). On June 16, 2023, Argo replied in support of its motion to strike, ECF No. 39, and replied in support of its motion to dismiss, ECF No. 40 ("MTD Reply"). On the same day, Spiel replied in support of the motion to strike and the motion to dismiss. ECF No. 41 ("Spiel Reply"). The Court held oral argument on February 2, 2024. ECF No. 43.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court draws all reasonable inferences in the plaintiff's favor and accepts as true all

non-conclusory allegations of fact. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc); *see also Iqbal*, 556 U.S. at 678. However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In considering a motion to dismiss under Rule 12(b)(6), "district courts 'may review only a narrow universe of materials,' which includes 'facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken,' as well as 'documents not expressly incorporated by reference in the complaint that are nevertheless "integral" to the complaint.'" *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (brackets and ellipses omitted) (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)). "Where a document is referenced in a complaint, the documents control and this Court need not accept as true the allegations in the . . . complaint." *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (quotation marks and citation omitted).

## DISCUSSION

Plaintiff alleges that Argo breached, and plans to continue breaching, the insurance contract by funding Spiel's settlement and continuing to represent Spiel "despite Modell's lack of consent" to the Spiel settlement and "Spiel's conduct" in making impermissible representations during the mediation, thereby depleting the available Policy limits. Compl. ¶¶ 42, 45, 48.

Argo, joined by Spiel, argues that the Court should dismiss the Complaint on two grounds. MTD Br. at 1-2; Spiel Br. at 1. First, Defendants argue that the Complaint should be dismissed because the "Policy does not give Modell the right to veto the settlement of claims against Spiel." MTD Br. at 5 (further capitalization omitted). Second, Defendants argue that the Complaint should be dismissed because "it improperly is based on confidential mediation communications," *id.* at 4 (capitalization omitted), that should be "stricken from the record," *id.* at 5; *see* MTS Br. Additionally, Spiel argues that the Complaint should be dismissed because "it does not allege any conduct on the part of Mr. Spiel (or Argo[]) that warrants the termination of Mr. Spiel's rights under the Policy." Spiel Br. at 2.

As set forth herein, the Court holds that Plaintiff fails to state a claim, without addressing the merits of Defendants' motion to strike the allegations in the Complaint regarding the confidential meditation process connected with the Adversary Proceeding.

## I. Legal Principles

Under New York law,[3] "an insurance policy is a contract, and unambiguous provisions are given their plain and ordinary meaning." *Ezrasons Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 394-95 (2d Cir. 2023). The Court must give the "words and phrases in a contract . . . their plain meaning" and construe the contract "so as to give full meaning and effect to all of its provisions." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (brackets and citation omitted). To interpret a contractual provision, "courts should

---

[3] The parties' briefs assume that New York state law governs. Such "implied consent is . . . sufficient to establish the applicable choice of law." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)); *see also* Compl. ¶ 3 ("According to the Policy, issues respecting allocation of insurance proceeds . . . are to be governed by New York law.").

consider the entire contract, not isolated words." *W2001Z/15 CPW Realty, LLC v. Lexington Ins. Co.*, 9 N.Y.S.3d 18, 19 (1st Dep't 2015).

"Only where a contract's terms are ambiguous can extrinsic evidence be used to aid interpretation." *Tang Cap. Partners, LP v. BRC Inc.*, 661 F. Supp. 3d 48, 61 (S.D.N.Y. 2023). "Whether or not a term of a contract is ambiguous is a question of law." *Ezrasons*, 89 F.4th at 395. "Ambiguity in a contract arises . . . where [the contract's] terms are subject to more than one reasonable interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 37 N.E.3d 78, 80 (N.Y. 2015) (quotation marks and citation omitted). "[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech." *Id.* at 81 (quoting *Mostow v. State Farm Ins. Cos.*, 668 N.E.2d 392, 394 (N.Y. 1996)).

Evidence "outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." *Donohue v. Cuomo*, 184 N.E.3d 860, 866 (N.Y. 2022) (citation omitted). "Interpretation of an unambiguous contract is for the court without a role for the factfinder." *Ezrasons*, 89 F.4th at 396.

When interpreting insurance policies governed by New York law, ambiguities are to be interpreted against the insurer and in favor of the insured. *Id.* However, this presumption "is used only as a matter of last resort, after making use of all other available tools to resolve the ambiguity." *Id.* (quotation marks and citation omitted). When an insured invokes that presumption, the insurer bears the burden to show that the insured's interpretation is unreasonable. *Id.*; *accord Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 697-98 (2d Cir. 1998).

## II. Relevant Policy Terms

There are two provisions at issue in this case. First, Plaintiff relies on the Policy language, as amended, which states that:

> Notwithstanding the Insurer's right and duty to defend any Claim under this Coverage Section, the Insureds shall have the option to:
>
> > 1. select the defense attorney or to consent to the Insurer's choice of defense attorney, which consent shall not be unreasonably withheld;
> >
> > 2. participate in, and assist in the direction of, the defense of any Claim; and
> >
> > 3. consent to a settlement, which consent shall not be unreasonably withheld.

Policy at 54 (emphasis omitted) ("Endorsement 1"). Plaintiff also claims a breach of the cooperation provision, as amended, which provides that:

> The Insured(s) shall give the Insurer full cooperation, assistance and information as the Insurer shall reasonably require, including without limitation, attendance at hearings and trials; the giving and securing of evidence; assistance in enforcing rights of contribution and indemnity or in asserting any counterclaim, cross claim or third party claim; and in the evaluation of damages and liability in connection with any Claim. The Insured(s) shall do nothing that shall prejudice the Insurer's position or its potential rights of recovery. The Insured(s) shall not undertake to negotiate to settle, offer to settle, or settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation, admit any liability, or stipulate to any judgment with respect to any Claim without the Insurer's prior written consent, such consent not to be unreasonably withheld. The failure of any Insured Person to comply with the provisions of this subsection shall not be imputed to any other Insured Person. Any Defense Costs incurred or settlements made without the Insurer's prior written consent shall not be covered under this Coverage Section.

*Id.* at 84 (emphasis omitted) ("Endorsement 22"); *see* Compl. ¶ 25.

Several defined terms are relevant to the disposition of these motions. A "Claim" includes, among other things:

> 1. a written demand against any Insured for monetary, non-monetary or injunctive relief . . . ;
>
> 2. a civil proceeding against any Insured commenced by the service of a complaint or similar pleading; [and]
>
> 3. a criminal proceeding against any Insured commenced by return of an indictment, information or similar document.

Policy at 24-25; ECF No. 34-4 at 4-5.

The term "Insured(s)" is defined as "1. the Insured Person(s); and 2. the Company." Policy at 25. The term "Insured Person(s)" is defined as "1. any one or more natural persons who were, now are or shall become (i) a duly elected or appointed director, trustee, governor, management committee member, Manager, officer, in house general counsel or controller of the Company . . .; or 2. any one or more natural persons not described in Subsection 1. above who were, now are, or shall become full-time, part-time, seasonal or temporary employees of the Company." Policy at 25-26; Spiel Reply at 5-6.

## III. Modell's Rights Under Endorsement 1

Modell seeks, among other relief, a declaration that Argo has no right or obligation to pay Spiel's settlement of his further defense because Modell, as another Insured under the Policy, did not consent to the Spiel settlement. Compl. ¶¶ 17, 34 ("The Policy requires Argo seek and obtain Modell's consent to settlements to be funded by it under the Policy."), 42, 45; MTD Opp. at 5-6.[4]

---

[4] During oral argument, Spiel advised the Court that the Policy limits have been exhausted since the Complaint was filed, and suggested that he may file a future motion based on mootness. Feb. 2, 2024 Oral Argument Tr. at 4:4-16, 16:24-17:4. Plaintiff then focused on seeking relief from the Policy limits against Argo rather than preventing Argo from funding Spiel's further defense. *Id.* at 7:1-9. The Court's analysis of the Complaint in this opinion applies regardless of whether the factual landscape and relief sought by Plaintiff has shifted in this regard.

Plaintiff argues that "[t]he policy says 'the Insureds' – pleural [sic] – 'shall' have the option to 'consent to a settlement.'" MTD Opp. at 6-7. Given that Plaintiff is an Insured, Plaintiff argues, he has the right to "consent to a settlement, which consent shall not be unreasonably withheld," as confirmed by prior statements from Argo representatives. MTD Opp. at 6-7; Compl. ¶ 17, 34. Defendants disagree with this interpretation and assert that this provision clearly provides that only the individual Insured whose claim is being settled has the option to consent to the settlement, and not every Insured under the Policy. *See* MTD Reply at 5.

As explained above, pursuant to Endorsement 1, the Policy provides that:

> Notwithstanding the Insurer's right and duty to defend any Claim under this Coverage Section, the Insureds shall have the option to:
>
> > 1. select the defense attorney or to consent to the Insurer's choice of defense attorney, which consent shall not be unreasonably withheld;
> >
> > 2. participate in, and assist in the direction of, the defense of any Claim; and
> >
> > 3. *consent to a settlement, which consent shall not be unreasonably withheld*.

Policy at 54; MTD Br. at 7 (emphasis added).

The plain and unambiguous language of the Policy, read in context, supports Defendants' reading. The third section of Endorsement 1 states that the "Insureds have the option to . . . consent to a settlement, which consent shall not be unreasonably withheld." Policy at 54. The clear meaning of this provision is that each Insured has the right to consent to a settlement on its own behalf; it does not mean that other Insureds have the right to block settlements with respect to other Insureds. This reading is clear when one considers that the provision does not just include the Insureds' option to "consent to a settlement"; it also provides that the Insureds may "select [his or her] defense attorney or to consent to the Insurer's choice of defense attorney,"

10

and that the Insureds may "participate in, and assist in the direction of, the defense of any Claim." *Id.*

If Plaintiff's reading of Endorsement 1 were correct, then each Insured would have the option to, for example, select the defense attorney for a criminal proceeding against another Insured or participate in and assist in the defense of a Claim that was asserted against another Insured. *See supra* § II (providing the Policy's definition of the term "Claim"). Indeed, *Spiel* would have the right to select *Plaintiff's* defense attorney and participate in, and assist in the direction of, *Plaintiff's* defense. Thus, under Plaintiff's view of the Policy, Plaintiff himself ran afoul of Endorsement 1 because he hired defense counsel and defended himself in the Adversary Proceeding presumably without the prior consent of Spiel (and any other Insureds under the Policy). That cannot possibly be the case. *See Chesapeake Energy*, 773 F.3d at 114 (courts should give the "words and phrases in a contract . . . their plain meaning" and construe the contract "so as to give full meaning and effect to all of its provisions" (brackets and citation omitted)); *Nomura Home Equity Loan, Inc. v. Nomura Credit & Cap., Inc.*, 92 N.E.3d 743, 747 (N.Y. 2017) ("[C]ourts should read a contract as a harmonious and integrated whole to determine and give effect to its purpose and intent." (quotation marks and citation omitted)); *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384 389-90 (2d. Cir. 2005) ("In construing insurance policies, words should be given the meanings ordinarily ascribed to them and absurd results should be avoided." (quotation marks and citation omitted)). The unreasonableness of Plaintiff's interpretation multiplies when one considers the fact that there are more "Insureds" than just Spiel and Plaintiff under the Policy. *See supra* § II (providing the Policy's definition of the term "Insured(s)"). Plaintiff's interpretation of Endorsement 1 would mean that *every* Insured has the right to block the settlement of every other Insured, the right to select defense

attorneys for every other Insured, and the right to "participate in, and assist in the direction of," the defense of any Claim against every other Insured. This is an unreasonable and illogical interpretation of the Policy.

Indeed, during oral argument, counsel for Plaintiff conceded that the Policy does not provide Plaintiff with rights against Spiel in either the first or second section of Endorsement 1 (that is, Plaintiff does not have the right to select counsel for Spiel or participate in the direction of the defense of a Claim against Spiel). Feb. 2, 2024 Oral Argument Tr. ("Tr.") at 23:7-24:2. The term "Insureds" cannot mean one thing for some subclauses of this provision and something else for another. Instead, the Court finds that Endorsement 1 is clear on its face and provides that each Insured (framed as "Insureds" because there may be multiple Insureds under the Policy) has the option to "consent to a settlement" of a Claim against himself, herself, or itself, not that each Insured may veto settlements on behalf of other Insureds. *See In re Residential Cap.*, 610 B.R. 725, 738 (Bankr. S.D.N.Y. 2019) ("[N]umerous courts in New York . . . have held that '*the* insured' in a policy exclusion is limited to only the insured that engaged in the excluded conduct." (collecting cases)).

Plaintiff asks the Court to look to the representations allegedly made by Argo representatives that the Policy afforded Plaintiff the right to consent to the settlement of another Insured (or not). *See, e.g.*, Compl. ¶ 17. Setting aside whether the documents submitted by Plaintiff actually contain such representations (which they do not appear to), such extrinsic evidence is not appropriate to consider because the Policy provision is clear and unambiguous. *See Tang*, 611 F. Supp. 3d at 61. Plaintiff has not pointed to any ambiguity in the language of the Policy, which the Court finds clear on its face. This situation is analogous to *Cougar Sport, Inc. v. Hartford Insurance Co. of the Midwest*, 737 N.Y.S.2d 770 (N.Y. Sup. Ct. 2000), *aff'd*,

12

733 N.Y.S.2d 151 (1st Dep't 2001). There, the plaintiff opposed a motion to dismiss, and asked the court to consider extrinsic evidence in the form of notations made by a claim adjustor for the defendant (an insurance company). *Id.* at 774. The plaintiff argued that the claim adjustor's notations indicated that defendant's agent read the relevant policy term more narrowly than defendant, and therefore the insurance policy term at issue was ambiguous. *Id.* Unconvinced by that argument, the court held that "since the meaning of the [challenged term] can be resolved from the four corners of the document, extrinsic evidence cannot be used" and that therefore, "no further discovery is warranted on the issue." *Id.*; *see also W2001Z/15 CPW Realty, LLC v. Lexington Ins. Co.*, No. 650593/2010, 2014 WL 264468, at *7 (N.Y. Sup. Ct. Jan. 22, 2014) (refusing to consider extrinsic evidence in the form of emails between the parties' insurance policy underwriters where policy terms were not ambiguous), *aff'd*, 9 N.Y.S.3d 18, 18 (1st Dep't 2015) (explaining that the lower court "correctly found that the subject insurance policies were unambiguous and, hence, excluded extrinsic evidence").

    Plaintiff also argues that "if the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured." MTD Opp. at 8. As an initial matter, the Court notes that this presumption "is used only as a matter of last resort, after making use of all other available tools to resolve the ambiguity." *Ezrasons*, 89 F.4th at 396 (quotation marks and citation omitted). The Court did not find that the provision is ambiguous, and therefore need not apply this presumption. Nevertheless, even if the Court had found the provision to be ambiguous, for the reasons already stated, Defendants have met their "burden of showing that the insured's interpretation is unreasonable." *Id.*

13

In sum, the Court finds that Endorsement 1 is unambiguous and does not give Plaintiff the right to block Spiel's settlement. Thus, Defendants have not breached or anticipatorily breached the Policy by proceeding with the Spiel settlement absent Modell's consent.

## IV.  Modell's Rights Under Endorsement 22

Plaintiff next argues that Spiel's supposed admissions of liability during the Adversary Proceeding without the consent of Argo violate the cooperation provision of the Policy, defined herein as Endorsement 22, which warrants denial of coverage of the Spiel settlement and any further defense costs for Spiel. MTD Opp. at 5 (citing Compl. ¶¶ 26-32). In relevant part, the cooperation provision reads:

> The Insured(s) shall give the Insurer full cooperation, assistance and information as the Insurer shall reasonably require, including without limitation, attendance at hearings and trials; the giving and securing of evidence; assistance in enforcing rights of contribution and indemnity or in asserting any counterclaim, cross claim or third party claim; and in the evaluation of damages and liability in connection with any Claim. The Insured(s) shall do nothing that shall prejudice the Insurer's position or its potential rights of recovery. The Insured(s) shall not undertake to negotiate to settle, offer to settle, or settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation, admit any liability, or stipulate to any judgment with respect to any Claim without the Insurer's prior written consent, such consent not to be unreasonably withheld. The failure of any Insured Person to comply with the provisions of this subsection shall not be imputed to any other Insured Person. Any Defense Costs incurred or settlements made without the Insurer's prior written consent shall not be covered under this Coverage Section.

Policy at 84. The question therefore is whether supposed admissions by Spiel in position papers and informal discovery as part of a confidential mediation session would run afoul of the aforementioned cooperation provision. Compl. ¶ 21-28. Argo, the insurer with which Spiel was tasked with cooperating, states that it does not, and the Court agrees.

14

Again, the language of the Policy does not support Plaintiff's interpretation or claim. The cooperation provision provides that Insureds must cooperate with the Insurer, including in the context of settlements, and provides potential remedies for the Insurer in the event that an Insured fails to cooperate. Plaintiff highlights in the Complaint that the cooperation provision states in relevant part that "[t]he Insured(s) shall do nothing that shall prejudice the Insurer's position or its potential rights of recovery" and "[t]he Insured(s) shall not undertake to negotiate to settle, offer to settle, or settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation, admit any liability, or stipulate to any judgment with respect to any Claim without the Insurer's prior written consent, such consent not to be unreasonably withheld." Policy at 84.

As a threshold matter, Plaintiff has cited no authority for the proposition that he has standing to object to Spiel's alleged noncooperation with Argo, supposedly in violation of a cooperation provision intended to inure to the benefit of the Insurer. Moreover, Plaintiff does not allege that defense costs were incurred or a settlement made without Argo's prior written consent. Rather, Plaintiff acknowledges in his Complaint that Argo consented expressly to Spiel's settlement. Compl. ¶ 39 ("Argo . . . has expressed its intention to fund the [Spiel] settlement."). Nor is there an allegation (even considering the allegations in the Complaint about the mediation associated with the Adversary Proceeding) that Spiel formally assumed a contractual obligation, admitted liability, or stipulated to judgment without Argo's consent. Local Bankruptcy Rule 9019-2(k)(1) and (m) of the Bankruptcy Court provides for the confidentiality and inadmissibility of mediation communications. *See, e.g.*, *In re Teligent, Inc.*, 640 F.3d 53, 57 (2d Cir. 2011) ("Confidentiality is an important feature of the mediation and other alternative dispute resolution processes"). The Court agrees with Insurer Argo that

discussions related to a confidential mediation proceeding that, under applicable Bankruptcy rules, may not be used in any proceeding, do not rise to the level of a breach of the cooperation clause in this case.

Indeed, Plaintiff cites to no case where comments made during confidential mediation discussions rise to the level of noncooperation sufficient to forfeit coverage. In support of his argument that forfeiture of coverage can result from behavior related to mediation, Plaintiff cites only to two inapposite cases. Opp. Br. at 11. The first is *Continental Casualty Co. v. ACE American Insurance Co.*, No. 07-cv-00958 (PAC), 2009 WL 857594 (S.D.N.Y. Mar. 31, 2009). There, the insured entered into a binding settlement during mediation proceedings, prior to obtaining the consent of the insurer, and the insurer denied coverage. *See id.* at *2, 5. Here, no settlement was entered into without the consent of Argo. Second, in *XL Specialty Insurance Co. v. Lakian*, 243 F. Supp. 3d 434, 442 (S.D.N.Y. 2017), the court found that the insured forfeited coverage under the policy when it defaulted in an underlying action, which was tantamount to admitting liability. In contrast, confidential discussions during a mediation session fall far short of defaulting in an action and incurring liability. Finally, setting aside that Argo has stated that it has not been prejudiced, Tr. at 10:13-17, for purposes of a motion to dismiss, Plaintiff has not pleaded that the Insurer was "prejudice[d]" or how any statements by Spiel in a confidential mediation process after which the Insurer consented to the ultimate settlement would have "prejudice[d] the Insurer's position," *compare* Policy at 84 ("The Insured(s) shall do nothing that shall prejudice the *Insurer's position* or its potential rights of recovery." (emphasis added)), *with* Compl. ¶ 22 ("Spiel made various admissions of liability *against his own interests and against Modell's interests* to the Liquidation Trustee." (emphasis added)).

The only response Plaintiff offers to this argument is that "[i]t is . . . not an appropriate argument on a motion to dismiss." MTD Opp. at 9. But "[i]nterpretation of an unambiguous contract is for the court without a role for the factfinder," *Ezrasons*, 89 F.4th at 396, and the Court disagrees with Plaintiff's interpretation of Endorsement 22 (and of Endorsement 1, for that matter). The Policy does not provide Plaintiff the right to block coverage for Spiel, or Spiel's settlement for which he obtained consent of the Insurer, even if the Court assumes as pleaded in the Complaint that Spiel made admissions against interest in the context of a confidential mediation. Accordingly, the Complaint is dismissed.

## V. Leave to Amend

To seek leave to amend, a plaintiff must at least "provide some indication of the substance of the contemplated amendment before a court could entertain the request." *Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 624 (S.D.N.Y. 2014), *aff'd*, 607 F. App'x 123 (2d Cir. 2015). Here, Plaintiff did not seek leave to amend the Complaint, nor did Plaintiff offer any explanation of how an amendment would cure the deficiencies in his Complaint. Therefore, the Court does not grant Plaintiff leave to amend. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint.").[5]

---

[5] Plaintiff also argues that "because Defendants rely on documents outside the Complaint . . . (*e.g.*, Declaration of O'Brien, Ex. A., mediation agreement)" "the Court may either exclude the extrinsic documents or convert the motion to one for summary judgment pursuant to Rule 56." MTD Opp. at 4-5 (emphasis in original). As explained, the Court declines to consider extrinsic evidence in deciding this motion to dismiss because the Policy language is not ambiguous. Therefore, there is no need to further consider Plaintiff's argument that this motion should be converted to one for summary judgment, and the Court declines to "grant[] the parties time for additional discovery and . . . to submit the additional materials necessary for a Rule 56 motion." *Id.* at 5.

VI.     **Motion to Strike**

As explained above, the Court finds that dismissal of the Complaint is warranted even if the Court does not strike the allegations challenged in the motion to strike. Defendants' motion to strike is therefore DENIED as moot, and requires no further analysis.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED. The motion to strike is DENIED as moot.

The Clerk of Court is respectfully directed to terminate ECF Nos. 20 and 24 and to CLOSE the case.

Dated: February 8, 2024
       New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge

18